UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAJCO LLC,<br>Plaintiff,<br>v.<br>JACKSON TIRE SERVICE, et al.,<br>Defendants. | No. 2:25-cv-01967-DC-JDP<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>(Doc. Nos. 19, 31) |

This matter came before the court on August 7, 2026, for a hearing on Plaintiff Majco LLC's motion for preliminary injunction. (Doc. No. 31.) Attorneys Nathan Jamieson and Kimberly Macey appeared on behalf of Plaintiff. Attorney Dean Ruiz appeared on behalf of Defendants Philip Bovero ("Philip")[1] and Jackson Tire Service ("Jackson Tire" and together with Philip, "Jackson Tire Defendants"). Attorneys Emily Malhiot and Joshua Escovedo appeared on behalf of Defendants Kurst Bovero ("Kurst") and Sierra Tire Co. ("Sierra Tire" and together with Kurst, "Sierra Tire Defendants"). Also pending before the court is the Sierra Tire Defendants' motion to dismiss, which the court took under submission without oral argument pursuant to Local Rule 230(g) on December 10, 2025. (Doc. Nos. 19, 26.) For the reasons explained below,

[1] To avoid ambiguity, the court will use first names when referring to Defendant Philip Bovero and his son, Defendant Kurst Bovero. Additionally, the court notes that in their briefing both parties interchangeably spell Defendant Philip Bovero's name as "Philip" and "Phillip." At the hearing on this motion, Mr. Bovero confirmed that the correct spelling is "Philip."

the court will grant Plaintiff's motion for preliminary injunction in part and deny the Sierra Tire Defendants' motion to dismiss.

## BACKGROUND

### A. Factual Background

This action arises from the business purchase of a tire shop, specifically Plaintiff's purchase of Jackson Tire from the Jackson Tire Defendants pursuant to an Asset Purchase Agreement ("APA") with an effective date of March 20, 2025. (Doc. No. 16 at 32–68.) Plaintiff alleges the following in its operative first amended complaint. (Doc. No. 16.)

Plaintiff agreed to purchase Jackson Tire, together with its goodwill and intellectual property, for $2,475,000.00. (*Id.* at ¶ 1.) Defendant Philip was Jackson Tire's Chief Executive Officer and its representative signatory to the APA. (*Id.* at 63.) Defendant Kurst is Philip's son and was employed at Jackson Tire for approximately twenty years prior to Plaintiff's purchase of the business. (*Id.* at ¶ 28.) Defendant Kurst is not a party to the APA, and Plaintiff does not allege that he is beholden to its terms. (*Id.* at ¶ 91.)

As part of the transaction, the Jackson Tire Defendants agreed to exit the tire market within 50 miles of Jackson Tire's location at 801 S. Highway 49 in Jackson, California (the "Purchased Location") and to abide by strict non-compete restrictions for a term of five years. (*Id.* at 1–2, 55.) At the time of purchase, Jackson Tire was operating out of a single service location at the Purchased Location. (*Id.* at ¶ 2.) Jackson Tire previously operated a second location in Pine Grove, California (the "Pine Grove Location"), less than 10 miles from the Purchased Location. (*Id.*) The Pine Grove Location was closed before Plaintiff's purchase of Jackson Tire. (*Id.*) As part of the APA, the Sierra Tire Defendants represented that the Pine Grove Location was permanently closed and would not be reopened. (*Id.*) Specifically, the APA acknowledges that "the operations of the [Pine Grove] Location have been shut down in their entirety since March ____,[2] 2024," and that the Jackson Tire Defendants "acknowledge[] and agree[] that the restrictive covenants set forth in Article XI apply to the [Pine Grove] Location, without

[2] This date was left blank in the APA.

exception." (*Id.* at 44.) Article XI requires that the Jackson Tire Defendants not "own, manage, control, operate, be employed by or an agent for, participate in, or consult for or provide services to, a business other than [Plaintiff] which sells or provides Automobile Repair Services." (*Id.* at 56.) Article XI further requires that the Jackson Tire Defendants not "directly or indirectly, through an affiliate or otherwise, communicate, divulge or use for the benefit of anyone other than [Plaintiff], any Confidential Information." (*Id.*) That section defines confidential information as "any information that relates to [Jackson Tire] or the Purchased Assets and that derives value because it is not generally known or readily ascertainable" including, "without limitation, trade secrets, customer lists, vendor lists, and financial information." (*Id.*)

On March 4, 2025, approximately three weeks before the APA's effective date, Defendant Kurst filed an Article of Incorporation with the State of California for Sierra Tire listing the Pine Grove Location as its principal place of business. (*Id.* at ¶ 29.) Kurst is listed as the only member of the Sierra Tire LLC. (*Id.*) However, Sierra Tire's posting with the Better Business Bureau previously listed Kurst as owner and Philip as co-owner of Sierra Tire.[3] (*Id.* at ¶ 31; p. 70.)

On March 26, 2026, the transaction closed and Plaintiff delivered $2,230,000.00[4] to the Jackson Tire Defendants. (*Id.* at ¶ 26.) On that same day Plaintiff and the Jackson Tire Defendants entered into a closing agreement wherein the Jackson Tire Defendants affirmed that there had "been no developments in [Jackson Tire], in the Purchased Assets, or at the [Purchased] Location which have had, or could be reasonably expected to have, a Material Adverse Effect on [Jackson Tire], Purchased Assets, or [Purchased] Location." (*Id.*; Doc. No. 31-5 at 147.)

Plaintiff alleges that Defendants conspired to circumvent the terms of the APA by surreptitiously opening Sierra Tire to directly compete with Plaintiff. (*Id.* at ¶ 33.) Alternatively, Plaintiff alleges that even if Defendant Philip did not directly conspire to open Sierra Tire, he

---

[3] The Better Business Bureau posting was edited to list only Kurst as owner following Plaintiff's filing of the first amended complaint. (Doc. No. 31-1 at 8 n.1.)

[4] The amount delivered to the Jackson Tire Defendants was less than the entire purchase amount because the APA allowed for Plaintiff to withhold $245,000.00 for a period of 12 months post-closing to satisfy any outstanding claims. (Doc. No. 16 at ¶ 26.) Plaintiff so withheld that amount. (*Id.*.)

knew that Defendant Kurst intended to do so and failed to disclose that information to Plaintiff in violation of the APA. (*Id.* at ¶ 34.) Plaintiff further alleges that the Sierra Tire Defendants exploited Jackson Tire's relationships, goodwill, and confidential information by using Jackson Tire's customer and vendor list to their benefit, and by improperly marketing Sierra Tire as the successor to Jackson Tire. (*Id.* at ¶¶ 35–50.)

**B. Procedural Background**

On July 14, 2025, Plaintiff filed the initial complaint. (Doc. No. 1.) On October 14, 2025, Plaintiff filed the operative first amended complaint asserting the following claims: (1) breach of the APA against the Jackson Tire Defendants; (2) breach of the implied covenant of good faith and fair dealing against the Jackson Tire Defendants; (3) misappropriation of trade secrets in violation of the Defend Trade Secrets Act against the Jackson Tire Defendants; (4) false designation of origin/unfair competition in violation of the Lanham Act against all Defendants; (5) intentional interference with contractual relations against the Sierra Tire Defendants; (6) misappropriation of trade secrets in violation of California Civil Code § 3426, *et seq.*, against all Defendants; and (7) unfair business practices in violation of California Business and Professions Code § 17200, *et seq.*, against all Defendants. (Doc. No. 16.)

On November 10, 2025, the Jackson Tire Defendants filed their answer. (Doc. No. 17.)

On November 14, 2025, the Sierra Tire Defendants filed the pending motion to dismiss. (Doc. No. 19.) On December 10, 2025, the court took the motion to dismiss under submission pursuant to Local Rule 230(g). (Doc. No. 26.) On December 12, 2025, Plaintiff filed an opposition. (Doc. No. 27.) On December 22, 2025, the Sierra Tire Defendants filed a reply. (Doc. No. 29.)

On June 5, 2026, Plaintiff filed the pending motion for preliminary injunction seeking injunctive relief as to all Defendants. (Doc. No. 31.) On June 22, 2026, the Sierra Tire Defendants filed an opposition. (Doc. No. 33.) On July 2, 2026, Plaintiff filed a reply thereto. (Doc. No. 4.) On July 21, 2026, the Jackson Tire Defendants filed an opposition.[5] (Doc. No. 37.) On July 31,

[5] The court has considered this untimely opposition. (*See* Doc. No. 40.)

2026, Plaintiff filed a reply thereto. (Doc. No. 41.)

## LEGAL STANDARD

### A. Motion for Preliminary Injunction

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. A plaintiff seeking a preliminary injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

The Ninth Circuit has adopted a "'sliding scale test,' which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)). "[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Id.* (quoting *All. For the Wild Rockies*, 632 F.3d at 1135). "[T]he serious questions standard is 'a lesser showing than likelihood of success on the merits.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Mont.*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)). "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.3d 738, 740 (2d Cir. 1952)). Although "[s]erious questions need not promise a certainty of success, nor even present a probability of success, [they] must involve a 'fair chance of success on the merits.'" *Id.* (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

/////

**B. Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## ANALYSIS

The court will first address Plaintiff's motion for preliminary injunction as to each set of defendants separately and then address the Sierra Tire Defendants' motion to dismiss.

**A. Motion for Preliminary Injunction**

1. <u>Jackson Tire Defendants</u>

Plaintiff seeks a preliminary injunction enjoining the Jackson Tire Defendants from: (i) owning, operating, or otherwise providing services to any automobile repair or tire service business within 50 miles of the Purchased Location; (ii) communicating with Defendant Kurst or

any other agent of Sierra Tire regarding the operations of Sierra Tire or Jackson Tire; (iii) soliciting or accepting business from any current Majco customer or former Jackson Tire customer on Sierra Tire's behalf; (iv) using, disclosing, or relying on confidential or trade secret information, including customer lists, acquired by Plaintiff by virtue of the APA; (v) making, authorizing, or failing to correct any statement suggesting that Sierra Tire is affiliated with Jackson Tire or Majco; and (vi) using or permitting use of any Jackson Tire or Majco trademarks, trade names, telephone numbers, domain names, or other indicia of origin. (Doc. No. 31 at 2–3.)

The court begins its analysis by addressing Plaintiff's likelihood of success on the merits of its breach of contract claim[6] against the Jackson Tire Defendants before turning to the other *Winter* factors.

a. *Likelihood of Success on the Merits*

Plaintiff alleges that the Jackson Tire Defendants violated the APA by: (1) failing to disclose that Defendant Kurst opened a competing business in the Pine Grove Location despite having actual knowledge of that competing business; (2) participating in the operation of Sierra Tire; (3) soliciting Jackson Tire customers to patronize Sierra Tire; and (4) helping Sierra Tire obtain possession of Jackson Tire assets rightfully purchased by Plaintiff in the APA, including Jackson Tire's telephone number, a list of Jackson Tire's customers and suppliers, and physical machinery left at the Pine Grove Location. (Doc. No. 31-1 at 19–23.)

/////

/////

/////

[6] Plaintiff does not seek injunctive relief relating to the Jackson Tire Defendants' alleged breach of the covenant of good faith and fair dealing, so the court does not address Plaintiff's likelihood of success on the merits of that claim. Further, the injunctive relief Plaintiff seeks relating to the Jackson Tire Defendants' alleged violation of the Defend Trade Secrets Act, the Lanham Act, and California Civil Code § 3246, *et seq.*, are all predicated on the same allegations as those supporting its claim for breach of contract and would entitle Plaintiff to the same injunctive relief to which Plaintiff is entitled to under that claim. Accordingly, in the interest of judicial efficiency the court does not analyze Plaintiff's likelihood of success on the merits of those claims in this order.

Under California[7] law, the elements of a claim for breach of contract are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff." *Johnson v. Altramirano*, 418 F. Supp. 3d 530, 550 (S.D. Cal. Dec. 2, 2019) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

Plaintiff asserts that the Jackson Tire Defendants breached the APA in several ways, some of which the court finds support Plaintiff's showing that it is likely to succeed on the merits of its breach of contract claim. First, Plaintiff contends that the Jackson Tire Defendants violated the APA by failing to disclose that Defendant Kurst was in the process of opening a competing business in the Pine Grove Location prior to the APA's closing. The APA acknowledges that "the operations of the [Pine Grove] Location have been shut down in their entirety since March ____, 2024," and that the Jackson Tire Defendants "acknowledge[] and agree[] that the restrictive covenants set forth in Article XI apply to the [Pine Grove] Location, without exception." (Doc. No. 16 at 44.) Article XI requires that the Jackson Tire Defendants not "own, manage, control, operate, be employed by or an agent for, participate in, or consult for or provide services to, a business other than [Plaintiff] which sells or provides Automobile Repair Services." (*Id.* at 56.)

---

[7] Plaintiff argues that the contractual dispute is governed by Delaware law pursuant to a choice of law provision in the APA. (Doc. Nos. 31-1 at 19; 31-5 at 133.) Neither the Sierra Tire Defendants nor the Jackson Tire Defendants address the choice of law provision in their oppositions. When, as here, a federal court exercises supplemental jurisdiction, it "applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Under California law, a choice of law clause is binding on the parties to a contract unless "(1) the chosen state does not have a substantial relationship to either the parties or the transaction; or (2) application of the chosen state's law would be contrary to a fundamental policy of a state with a materially greater interest in the particular issue." *Id.* (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992). The party advocating application of the choice of law provision has the burden of establishing that application is proper. *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1166 (S.D. Cal. 2015) (citing *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001)). Here, Plaintiff alleges that all parties to the APA reside in California, and that both the Purchased Location and Pine Grove location are in California. (Doc. No. 16 at ¶¶ 6–10.) Plaintiff does not allege why Delaware has any relationship to the parties or transaction, let alone a substantial relationship. Thus, Plaintiff has not met its burden of showing that Delaware law should apply. The court will apply California law to Plaintiff's contractual claims.

Further, in the Closing Agreement the Jackson Tire Defendants affirmed that there had "been no developments in [Jackson Tire], in the Purchased Assets, or at the [Purchased] Location which have had, or could be reasonably expected to have, a Material Adverse Effect on [Jackson Tire], Purchased Assets, or [Purchased] Location." (*Id.*; Doc. No. 31-5 at 147.) The APA defines "Material Adverse Effect," as relevant here, as "any effect or change that is, or is reasonably likely to be materially adverse with respect to . . . the business, operations, [or] operations of Seller or the Business." (Doc. No. 16 at 34.) Plaintiff contends Defendant Philip and his wife, non-party Wendy Bovero,[8] breached these provisions of the APA and the Closing Agreement by failing to disclose that Defendant Kurst was in the process of opening Sierra Tire in the Pine Grove Location despite having actual knowledge of that development. (Doc. No. 31-1 at 20–21.) To support their contention that Wendy and Philip had actual knowledge of Sierra Tire, Plaintiff attaches text messages between Wendy, Philip, and Kurst in which Wendy discusses Kurst's travels to the Pine Grove Location. (Doc. No. 31-5 at 197–202.) These text messages occurred in January and February 2025, after Jackson Tire had abandoned the Pine Grove Location, and both before and after Kurst's February 14, 2025 execution of the Commercial Lease Agreement for the Pine Grove Location on Sierra Tire's behalf. (Doc. No. 31-5 at 204–209.) Plaintiff also attaches a text message from Wendy to Kurst in which Wendy provides Kurst with Jackson Tire's customer list the day after Kurst quit Jackson Tire, and before the APA closed. (Doc. No. 31-5 at 217–218.) Plaintiff contends that as Chief Financial Officer and Secretary of Jackson Tire, Wendy's knowledge of Sierra Tire can be imputed to Jackson Tire. (Doc. No 31-1 at 21 n.5) (citing *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005)).

In their opposition, the Jackson Tire Defendants contend that Defendant Philip and Wendy "had no knowledge that Kurst was intending to open Sierra Tire until five or six days after escrow

---

[8] Wendy served as Jackson Tire's Chief Financial Officer and Secretary and consented to the APA and all its provisions. (Doc. No. 16 at 49) ("In the event the Owner is married, Purchaser shall have received written confirmation . . . that the spouse of Owner has consented to the terms of this Agreement, the sale of the Purchased Assets and all other aspects of the transaction contemplated by this Agreement."); (Doc. No. 31-5 at 143–144) (consent of spouse agreement executed by Wendy).

closed on March 26, 2025," when they were informed of Kurst's intentions by several neighbors at a local tavern. (Doc. Nos. 37 at 10; 37-1 at ¶ 12; 37-2 at ¶ 3.) The Jackson Tire Defendants further allege that Philip was unaware that Wendy was communicating with Kurst regarding his visits to the Pine Grove Location following its closure, and that Wendy only discussed Kurst's ongoing visits to the Pine Grove Location and transferring utilities to his name because "Wendy, Phil and Kurst did not have heir own [] water deliver[y] or garbage service accounts," such that "Wendy understood that if Kurst were going to transfer any accounts they would be in [Kurst's] name for his personal use." (Doc. Nos. 37 at 16; 37-1 at ¶ 25; 37-2 at ¶ 6.)

The Jackson Tire Defendants' allegations are unpersuasive for several reasons. First, as Plaintiff notes in its reply, Philip's allegation that he became aware of Kurst's plan to open Sierra Tire "five or six days after escrow closed on March 26, 2025," is contradicted by his own deposition testimony in which he attests that he "found out very end of May, possibly beginning of June." (Doc. No. 42 at 14.) Further, while Wendy attests that she discussed switching the utilities at the Pine Grove Location into Kurst's name so that he could continue disposing of his personal garbage there, Jackson Tire's lease at the Pine Grove Location had expired months before she sent the messages; the court finds unpersuasive Wendy's explanation that she believed Kurst would arrange for garbage service, and continue to dispose of his garbage, at a location where he had no legal right to access. Thus, the court finds that Plaintiff has demonstrated a likelihood of success on the merits of its claim that the Jackson Tire Defendants breached the APA and Closing Agreement by failing to disclose Kurst's opening of Sierra Tire in the Pine Grove Location despite having knowledge of that development.

Second, Plaintiff contends that the Jackson Tire Defendants breached the non-compete provision of the APA by participating in Sierra Tire's operations. As addressed above, the APA forbids the Jackson Tire Defendants from "participat[ing] in . . . a business other than [Plaintiff] which sells or provides Automobile Repair Services." (Doc. No. 16 at 56.) Plaintiff argues that Wendy violated this provision of the APA by, on the day after Kurst quit Jackson Tire, providing him with a copy of Jackson Tire's customer list for his use at Sierra Tire. (Doc. No. 31-1 at 21.)

In their opposition, the Jackson Tire Defendants contend that Wendy sent Kurst the

customer list because "Jackson Tire had several accounts receivable from customers for whom services were rendered at" the Pine Grove Location, and "Wendy asked Kurst to help collect from the customers" using the list. (Doc. Nos. 37 at 15; 37-2 at ¶ 7.) However, as Plaintiff emphasizes in its reply, Kurst quit Jackson Tire the day before Wendy sent him the customer list. (Doc. No. 31-5 at 89) (Kurst confirming in deposition testimony that as of March 23, 2025, his "business with respect to Jackson Tire was done" meaning that he "had no need to interact with Jackson Tire's business at all"). Further, in Kurst's deposition testimony regarding the customer list he attests that he "ask[ed] for the Pine Grove customer list" because he "wanted the customer list for [him]self." (Doc. No. 31-5 at 92.)

Thus, the court finds that Plaintiff has demonstrated a likelihood of success on the merits of its claim that the Jackson Tire Defendants breached the non-compete argument through Wendy's distribution of Jackson Tire's customer list.[9]

Third, Plaintiff contends that the Jackson Tire Defendants breached the non-solicitation provision of the APA through an April 26, 2025, Sierra Tire Facebook post which proclaimed "We're Back and Better Than Ever! . . . Kurst is opening up his very own tire shop—right in Pine Grove at his old location! That's right—same spot, brand new beginning. This time, he's the owner, and he's bringing over 20 years of experience, hard work, and dedication to serve our local friends and neighbors." (Doc. No. 31-5 at 305.) Plaintiff fails to explain, however, why this statement is attributable to the Jackson Tire Defendants, or whether the Jackson Tire Defendants had any knowledge of the statement whatsoever. Indeed, Philip attests that he has not solicited any customers on Sierra Tire's behalf. (Doc. No. 37-1 at ¶ 20.) Accordingly, Plaintiff has failed to

[9] Plaintiff additionally contends that Defendant Philip violated the non-compete provision of the APA by serving as owner of Sierra Tire. (*Id.*; Doc. No. 31-5 at 185) (screenshot of Sierra Tire's Better Business Bureau profile naming Philip as Co-Owner). However, this evidence is contradicted by Sierra Tire's Article of Incorporation with the State of California which lists Kurst as the sole member and CEO of Sierra Tire Co. LLC. (Doc. No. 31-5 at 187–188.) Further, evidence submitted with Plaintiff's Reply indicates that Kurst contacted the Better Business Bureau to request that Philip's name be removed from Sierra Tire's profile because he was not affiliated with the business. (Doc. No. 35 at 5–9.) Thus, the court finds that Plaintiff has not submitted sufficient evidence for the court to find that Plaintiff is likely to show that Philip serves as a co-owner or otherwise maintains a financial interest in Sierra Tire.

demonstrate a likelihood of success on the merits of its claim that the Jackson Tire Defendants violated the APA's non-solicitation provision through Sierra Tire's Facebook marketing.

Fourth, Plaintiff argues that the Jackson Tire Defendants breached the APA by facilitating Sierra Tire's possession of assets purchased by Plaintiff under the APA. (Doc. No. 31-1 at 22–23.) Specifically, Plaintiff contends that Sierra Tire has obtained possession of and is currently utilizing the telephone number (209) 296-8473, which is a phone number previously used at the Pine Grove Location. (*Id.* at 23.) Exhibit B to the APA includes as Purchased Assets all "intangibles related to the operation of the Business including, but not limited to . . . The following phone number: (209) 223-3000." (Doc. No. 16 at 65.) While the subject telephone number currently used by Sierra Tire, (209) 296-8473, is not specifically listed in the APA, the assets purchased in the APA are "not limited to" those explicitly detailed, and the inclusion of the telephone number employed at the Purchased Location implies that the telephone number used at the Pine Grove Location would be considered an "intangible[] related to the operation of the Business." (Doc. No. 16 at 65.) Additionally, section 10.8(b) of the APA requires that "[a]t or promptly after closing, Seller will transfer the phone number(s) and fax telephone number(s) utilized in [Jackson Tire] to [Plaintiff] to maximize the effectiveness of the transition of [Jackson Tire] to [Plaintiff]." (*Id.* at 55.) Indeed, the use of the plural phone "number(s)" indicates that the parties to the APA agreed that all numbers used by Jackson Tire were purchased by Plaintiff via the APA. In the opposition, Philip asserts that he did not "transfer, assign, or knowingly relinquish any telephone number to Kurst or to Sierra Tire." (Doc. No. 37-1 at ¶ 5.) But the APA does not require that the telephone numbers not be transferred to a competitor; it requires that the telephone numbers be transferred to Plaintiff. (Doc. No. 16 at 65.)

Plaintiff further contends that the Jackson Tire Defendants improperly failed to transfer exclusive ownership of Jackson Tire's customer lists and physical equipment to Plaintiff. (Doc. No. 31-1 at 22–23.) Both Jackson Tire's customer list and physical equipment are explicitly listed as assets purchased by Plaintiff in the APA. (Doc. No. 16 at 65) (listing "All Books and Records" and "All Equipment" as assets transferred in the APA). While the Jackson Tire Defendants contest whether the customer list constitutes a trade secret, this is irrelevant to whether its

distribution breached the APA as the APA explicitly lists the customer list as an item rightfully transferred to Plaintiff. Further, while the Jackson Tire Defendants contend that the equipment "formerly used by Jackson Tire at the Pine Grove Location . . . are fixtures that Jackson Tire was required to leave when the lease ended," they do not provide their lease for the Pine Grove Location or any other documentation to support this allegation. Accordingly, the court finds that Plaintiff has demonstrated a likelihood of success on the merits of its claim that the Jackson Tire Defendants breached the APA by failing to transfer the phone number (209) 296-8473, Jackson Tire's customer list, and all Jackson Tire equipment to Plaintiff.

For these reasons, the court finds that Plaintiff has shown it is likely to succeed on the merits of its breach of contract claim.

b. *Likelihood of Irreparable Harm*

The court now turns to whether Plaintiff has demonstrated it is likely to suffer irreparable harm in the absence of the court granting the requested preliminary injunctive relief. To obtain a preliminary injunction, Plaintiff must show that the risk of irreparable harm is "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131.

As Plaintiff emphasizes, the parties agree in the APA that a breach of the non-compete, confidentiality, and non-solicitation clauses would "give rise to irreparable harm to [Plaintiff], for which monetary damages would not be an adequate remedy." (Doc. No. 16 at 56.) This alone is insufficient to demonstrate irreparable harm. *Int'l Ass'n of Plumbing and Mech. Officials v. Int'l Conf. of Bldg. Officials*, 79 F.3d 1153, 1153 (9th Cir. 1996) (stating that the Ninth Circuit is not "aware of[] any authority which allows a petitioner seeking injunctive relief to meet its burden on the issue of irreparable injury *solely* by referring to such a contractual provision"). However, courts in California have emphasized that injury to a business's goodwill and reputation resulting from breach of non-compete and confidentiality clauses constitutes irreparable harm. *See Ocean Beauty Seafoods, LLC v. Pac. Seafood Grp. Acquisition Co.*, 648 F. App'x 709, 711 (9th Cir. 2016) ("An enforceable noncompete agreement affords fair protection to a legitimate interest of the former employer. Thus, a breach of the agreement occasions harm. Because the harm is intangible and difficult to quantify, it qualifies as irreparable."); *Super Chefs, Inc. v. Second Bite*

*Foods, Inc.*, No. 15-cv-00525-SJO, 2015 WL 12914441, at *4 (C.D. Cal. June 11, 2015) ("[L]oss of trade secrets cannot be measured in money damages . . . [because] a trade secret once lost . . . is lost forever.") (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)). Finally, Plaintiff argues that the loss of customers, goodwill, and reputation caused by the breach of these provisions has caused the monthly revenue of the Purchased Location to be roughly half what it was before Plaintiff's acquisition. (Doc. No. 31-1 at 29.) Plaintiff's Chief Operating Officer attests that continued competition from Sierra Tire will lead to an irrecoverable diminishment of Plaintiff's customer base. (Doc. No. 31-4 at ¶ 11.) Evidence of prospective loss of customers or goodwill supports a finding of irreparable harm. *Stuhlbarg Int'l Sales co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 841 (9th Cir. 2001). Thus, Plaintiff has demonstrated a likelihood that the Jackson Tire Defendants' alleged breach of the non-compete and confidentiality provisions of the APA causes Plaintiff irreparable harm that is intangible and difficult to quantify.

On the other hand, Plaintiff makes no argument as to why the Jackson Tire Defendants' alleged failure to transfer the telephone number previously used at the Pine Grove Location or the physical equipment therein cannot be adequately compensated by monetary damages. *See Jinya Franchise Inc. v. Pam Group, LLC*, No. 13-cv-01232-JAK, 2013 WL 12133688, at *8 (C.D. Cal. Aug. 1, 2013) (finding irreparable harm relating to unauthorized use of the plaintiff's trademarks but not for continued use of purchased telephone number); *Voss v. Superior Ct. of Cal., Cnty. of Sacramento*, No. 2:26-cv-01949-DC-JDP, 2026 WL 1494006 (E.D. Cal. May 28, 2026) (declining to find irreparable harm related to loss of physical equipment where the plaintiff did "not explain why she cannot replace any of her equipment, records, or the physical contents of [her] studio" or "explain why she cannot later obtain compensation through money damages should she prevail on her underlying claims").

Accordingly, the court finds that Plaintiff has demonstrated a likelihood of irreparable harm relating to the Jackson Tire Defendants' alleged breach of the non-compete and confidentiality provisions, but not of the Jackson Tire Defendants' alleged failure to transfer the Pine Grove Location's phone number or equipment in the Pine Grove Location to Plaintiff.

c. *Balance of the Equities*

The court now turns to the balance of equities in the event the court were to enjoin the Jackson Tire Defendants from further distribution of Jackson Tire's customer list or other violation of the APA. The balancing of equities is a matter of a court's equitable discretion, and the assignment of weight to particular harms is a matter for district courts to decide. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010).

Plaintiff contends that without injunctive relief, it will continue to lose the goodwill, customer base, and market position it bargained for in purchasing Jackson Tire. (Doc. No. 31-1 at 29–30.) Plaintiff further contends that any alleged harm to Jackson Tire is self-inflicted and that Jackson Tire cannot rely on injuries caused by its own contractual breaches. (*Id.* at 30) (citing *Flip Flop Shops Franchise Co., LLC v. Neb*, No. 16-cv-7259-JFW, 2016 WL 9275403 (C.D. Cal. Dec. 5, 2016); *Bad Ass Coffee Co. of Haw. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1251 (D. Utah 2009).

In their Opposition, the Jackson Tire Defendants contend that the court should not shut down an entire small business based on speculative harm or prevent "post-closing communications between a father and son concerning the son's business." (Doc. No. 37 at 22.) However, as discussed below, the court will not enter an injunction closing Sierra Tire. Further, Philip's participation in Sierra Tire is prohibited by the APA. (*See* Doc. No. 16 at 55.) The Jackson Tire Defendants cannot argue that the balance of equities favors this court declining to enforce a contractual term that Defendants freely entered into.

As addressed above, the court finds that Plaintiff has demonstrated a likelihood of irreparable harm absent an injunction. Further, as emphasized by Plaintiff, the Jackson Tire Defendants cannot object to any harm caused to them in remedying their alleged breaches of the APA. Accordingly, the court finds that the balance of equities tips in Plaintiff's favor.

d. *Public Interest*

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d

1109, 1138 (9th Cir. 2009). Here, the preliminary injunction is narrow and does not impact non-parties. Accordingly, the court finds that the effect of injunctive relief on the public interest is neutral.

In sum, the court finds that Plaintiff has demonstrated a likelihood of success on its claim that the Jackson Tire Defendants breached the APA by failing to disclose that Kurst planned to open a competing business in the Pine Grove Location, by providing Kurst with a copy of Jackson Tire's customer list, and by failing to transfer possession of the Pine Grove Location's telephone number and equipment in the Pine Grove Location to Plaintiff. The court further finds that Plaintiff has demonstrated a likelihood of irreparable harm as to the Jackson Tire Defendants' alleged failure to disclose the competing location and provision of Jackson Tire's customer list to Sierra Tire. Finally, the court finds that the balance of equities weighs in favor of granting equitable relief, and that the public interest is not affected by the injunction. Accordingly, the court will grant in part Plaintiff's motion for a preliminary injunction against the Jackson Tire Defendants, specifically to enjoin them from any continued participation in Sierra Tire and sharing of confidential information to the Sierra Tire Defendants.

2. <u>Sierra Tire Defendants</u>

Plaintiff seeks a preliminary injunction against the Sierra Tire Defendants enjoining Sierra Tire from continuing to operate at the Pine Grove Location, or any other location within 50 miles of the Purchased Location, during the pendency of this action. (Doc. No. 31 at 3.) In the alternative, Plaintiff seeks a preliminary injunction prohibiting the Sierra Tire Defendants from using, accessing, disclosing, or relying upon any Jackson Tire customer lists; using any equipment formerly used by Jackson Tire; using or advertising the telephone number (209) 296-8473; advertising or suggesting that Sierra Tire is the successor to or otherwise affiliated with Jackson Tire or Plaintiff; and requiring that the Sierra Tire Defendants remove, retract, or correct all marketing materials or statements that suggest that Sierra Tire is connected to Jackson Tire. (*Id.* at 3–4.)

a. *Likelihood of Success on the Merits*

i. Lanham Act Claim

To establish false designation of origin in violation of the Lanham Act, a plaintiff must prove:

> [D]efendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts.

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996). "A likelihood of confusion exists when consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Id.* (quoting *Metro Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993)).

Plaintiff contends that the Sierra Tire Defendants violated the Lanham Act by "falsely represent[ing] Sierra Tire as the successor to Jackson Tire and" by "repeatedly ratif[ying] customer misimpressions to that effect." (Doc. No. 31-1 at 25.) Specifically, Plaintiff points to a Facebook post posted by Sierra Tire which states, in its entirety:

> Amador County—We're Back and Better Than Ever!
>
> After years of serving this amazing community, Kurst is opening up his very own tire shop—right in Pine Grove at his old location! That's right—same spot, brand new beginning. This time, he's the owner, and he's bringing over 20 years of experience, hard work, and dedication to serve our local friends and neighbors.
>
> We're building this from the ground up with love, grit, and a whole lot of local pride. If you've been with us before, you know how much we care—and if you're new, come see what real community service feels like.
>
> The official opening date is coming soon, so stay tuned! In the meantime, help us spread the word—share, repost, tag a friend, and let Amador Country know we're rolling in.

(Doc. No. 31-5 at 305.) Plaintiff additionally alleges that its Chief Operating Officer Matt Eckman anonymously called Sierra Tire on June 4, 2025, and asked Kurst whether Sierra Tire

was a continuation of Jackson Tire. (Doc. No. 31-4 at ¶ 5.) Kurst allegedly responded to that question in the affirmative. (*Id.*)

Further, Plaintiff contends that the Sierra Tire Defendants' misrepresentations regarding Sierra Tire's affiliation with Jackson Tire are likely to, and already have, caused consumer confusion. (Doc. No. 1-1 at 26.) Plaintiff points to consumer responses to the above quoted Facebook post in which customers proclaim, "[y]ou guys are BACK!!!" and "[s]o happy to hear that you are back in Pine Grove yea." (Doc. No. 31-5 at 317, 321.)

In their opposition, the Sierra Tire Defendants contend that the social media posts referring to Sierra Tire's return to Pine Grove and decades of experience referred only to Kurst's return and experience, and that such representations would not cause a rational consumer to take their business to Sierra Tire under the mistaken belief of affiliation with Jackson Tire. (Doc. No. 33 at 15–16.) The Sierra Tire Defendants ignore, however, Plaintiff's allegation that Kurst specifically confirmed that Sierra Tire was a continuation of Jackson Tire. Further, while the Sierra Tire Defendants contend that the Facebook post referred only to Kurst's return to the Pine Grove Location, the post was posted by the Sierra Tire Facebook page and referred to the return in the plural "we." *See Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 115 F. Supp. 3d 1171, 1179 (E.D. Cal. 2015) ("By using 'we,' defendant is likely to cause a member or prospective member to believe it is affiliated with plaintiff.").

Thus, the court finds that Plaintiff has demonstrated, at the very least, serious questions as to the likelihood of success on the merits of its Lanham Act claim for false designation of origin and unfair competition.

ii. Intentional Interference with Contractual Relations

To establish intentional interference with contractual relations, a plaintiff must prove "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 791 P.2d 587, 589–90 (1990)).

Plaintiff contends that despite his knowledge of the sale of Jackson Tire to Plaintiff, Defendant Kurst induced the Jackson Tire Defendants to breach their obligations under the APA by encouraging the Jackson Tire Defendants to assist in his opening of Sierra Tire, and by encouraging Wendy to send him the Jackson Tire customer list. (Doc. No. 31-1 at 27–28.) In their opposition, the Sierra Tire Defendants argue first that Plaintiff cannot simultaneously allege that the Sierra Tire Defendants conspired with Philip to breach the APA and that they interfered with its performance. (Doc. No. 33 at 18.) The Sierra Tire Defendants emphasize that Plaintiff alleges "Philip, Kurst, and Wendy 'concocted a plan to retain [Plaintiff's] money while ensuring Kurst would acquire the ownership he had always wanted.'" (*Id.*) (quoting Doc. No. 31-1 at 13.) Thus, the Sierra Defendants argue, because it is alleged "Kurst and Sierra Tire were working together with Philip and Jackson Tire [they] could not tortiously interfere with the APA" because a party cannot tortiously interfere with a contract to which it is a party. (*Id.*) As discussed in detail in the analysis on the Sierra Tire Defendants' motion to dismiss below, this argument is unavailing because the Ninth Circuit forbids a party to a contract from being held liable under tort for its breach; this does not extend to any party with an economic interest in the contract's outcome.

Second, Sierra Tire contends that Kurst "did not know anything about the APA," "did not tell his parents that he was opening Sierra Tire or leasing the Pine Grove Location," and that although he asked for and received the customer list, "he did not know that they were subject to the APA" such that "[t]here is simply no knowledge of the APA or inducement to breach it by Kurst and Sierra Tire." (Doc. No. 33 at 18.)

In its reply, Plaintiff contends that a defendant need only have knowledge of the subject contract to induce its breach, and that "[i]ntentional interference does *not* require 'full knowledge of the contract's terms.'" (Doc. No. 34 at 11) (quoting *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011)). While intentional inducement may not require full knowledge of the contract's terms, it does require "intentional acts designed to induce a breach or disruption of the contractual relationship." *See Oakley, Inc. v. Nike, Inc.*, 988 F. Supp. 2d 1130, 1136 (C.D. Cal. 2013) (stating that "the opinion [in *Little*] is clearly discussing the question of whether the defendant had knowledge of the contract, which is undisputed here, and not whether the

defendant had committed intentional acts designed to induce a breach. [Plaintiff's] interpretation would essentially blur the two elements into a single inquiry and eviscerate the intent requirement inherent in the tort."); *see also Davis v. Nadrich*, 147 Cal. App. 4th 1, 10–11 (2009) ("[Plaintiff] cannot prove the tort of interference with contract because he has not brought forth any facts to show that [Defendant] was sufficiently aware of the details of the [subject] partnership contract to form an intent to harm it."). Here, the Sierra Tire Defendants' only alleged intentional action was Kurst's request that Wendy send him the Jackson Tire customer list. There is no evidence that Kurst was aware that that information was subject to a confidentiality provision in the APA, and no indication that Kurst otherwise believed that that information was contemplated in the APA. Thus, Plaintiff has not demonstrated a likelihood of success on the merits of its claim that the Sierra Tire Defendants intentionally interfered with its contractual relationship with the Jackson Tire Defendants. Because Plaintiff has not demonstrated that the Sierra Tire Defendants acted intentionally to induce breach of any term of the APA, it has not demonstrated a likelihood of success on the merits of its claim for intentional interference with contractual relations.

iii. California Uniform Trade Secrets Act Claim[10]

To establish misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must prove: "(1) the plaintiff owned a trade secret, (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citing *CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008)). The definition of trade secret under CUTSA is information that "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* (citing Cal. Civ. Code. § 3426.1(d) (emphasis omitted).

Plaintiff contends that the Sierra Tire Defendants misappropriated Plaintiff's trade secrets

[10] Plaintiff's claim for misappropriation of trade secrets in violation of the Defend Trade Secrets Act is brought against the Jackson Tire Defendants only.

by inducing Wendy to send Jackson Tire's customer and vendor list to Kurst. (Doc. No. 31-1 at 24–25.) Plaintiff argues that those lists constitute trade secrets because they were the result of significant time and energy, because they were valuable to Jackson Tire's competitors, and because prior to Wendy's disclosure to Kurst, Jackson Tire had never disclosed the lists to any competitors. (*Id.* at 24.) In their opposition, the Sierra Tire Defendants argue that the customer and vendor list is not a trade secret because it "consist[s] of names and contact information only" such that it contains information "readily ascertainable through public sources, such as business directories." (Doc. No. 33 at 14) (quoting *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997)). In its reply, Plaintiff responds that a customer list may be a trade secret where the information is difficult to obtain, and where the plaintiff expends significant time and resources gathering it. (Doc. No. 34 at 8) (citing *Morlife*, 56 Cal. App. 4th at 1521–22)).

> Customer lists containing merely public information that can easily be compiled by third parties will not be protected as trade secrets; however, where the party compiling the customer lists, while using public information as a source, expends a great deal of time, effort and expense in developing the lists and treats the lists as confidential in its business, the lists may be entitled to trade secret protection. While the information contained on the lists and the notes is ultimately ascertainable from public sources, it is not readily ascertainable from public sources: A third party wishing to duplicate the information could not do so without investing a significant amount of time, effort, and expense.

*Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089–90 (E.D. Cal. 2012). Here, the customer list consists entirely of customer names, addresses, and phone numbers. (Doc. No. 31-5 at 220–239.) Plaintiff contends that it is nonetheless a trade secret because Jackson Tire expended significant time and energy in compiling the list. (Doc. No. 31-1 at 24.) As evidence of this, Plaintiff submits the declaration of Plaintiff's Vice President of Partnerships who attests that "[b]ased on [his] experience, these customer and vendor lists were the result of significant time and energy, and they would allow [Plaintiff] to seamlessly transition as the successor of Jackson Tire." (Doc. No. 31-3 at ¶ 9.) In their reply, Plaintiff further contends that the customer list was "built over decades," that Jackson Tire's "employees entered the name, address, and phone number of every customer and vendor, one at a time, until it ran 'over 700 pages.'" (Doc. No. 34 at 9.) Plaintiff cites paragraphs 50 and 54 of the Kurst declaration for this information. (*Id.*) In

that portion of Kurst's declaration, he attests that for "each new customer, a Jackson Tire employee would input their name, address, and phone number into the database" and that he has "not used th[e] list to solicit customers or vendors" because when he "saw that it was over 700 pages, [he] believed it would be inefficient to cold call each individual or entity." (Doc. No. 33-2 at ¶¶ 50, 54.) If every customer list was made a trade secret by virtue of an employee entering customer information into the list, it is unclear how *any* customer list would not be a trade secret. Further, Plaintiff contends that the Sierra Tire Defendants' argument fails because "Kurst does not suggest a competitor could recreate it." (Doc. No. 34 at 9.) But the burden is not on Kurst to show that injunctive relief is not warranted; the burden is on Plaintiff to show that injunctive relief is warranted. *Winters*, 555 U.S. at 22 (stating moving party bears the burden of persuasion to obtain preliminary injunction). Plaintiff does not meet the burden of demonstrating a likelihood of success on the merits of its claim that the customer list constitutes a trade secret where the customer list contains only publicly available information, and where the only evidence of time, energy and expense spent on creating the customer list is from Plaintiff's agent based on information and belief, and that Jackson Tire employees entered the publicly available information into the list. Thus, Plaintiff has not demonstrated a likelihood of success on the merits of its claim that the Sierra Tire Defendants' procurement of the customer list constitutes misappropriation of a trade secret, especially where there is no indication that the list has been used by Sierra Tire Defendants, and indeed the evidence reflects that the lists have affirmatively not been used.

Plaintiff also contends that the Sierra Tire Defendants misappropriated trade secrets by acquiring Jackson Tire's sales information for the years 2024 and 2025 from Jackson Tire's contact at third-party American Tire Distributors. (Doc. No. 31-1 at 24–25.) But Plaintiff does not allege that the Sierra Tire Defendants obtained any information from American Tire Distributors in the first amended complaint. Further, although Plaintiff asserts in the motion for preliminary injunction that Kurst "secured Jackson Tire's sales information from American Tire Distributors, which identified the top 20 types of tires that Jackson Tire had sold in 2024 and 2025," (Doc. No. 31-1 at 16), Plaintiff does not allege that Plaintiff or the Jackson Tire Defendants played any role

in creating or securing this information. The Sierra Tire Defendants contend that sales information belonged to American Tire Distributors, not Plaintiff, and that "[a]bsent ownership, there is no claim." (Doc. No. 33 at 15.) Indeed, the first element of a trade secret misappropriation claim is ownership. The general principle of trade secret ownership "is that the one who discovers, develops, or compiles a trade secret is the owner of the trade secret." *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048-JVS, 2023 WL 2633961, at *2 (C.D. Cal. Feb. 10, 2023) (quoting *Trade Secrets Practice in California* § 2.1 (2d Ed. Nov. 2018)). Here, there is no allegation or evidence that Plaintiff discovered, developed, compiled, or even knew about the tire list obtained through American Tire Distributors, thus Plaintiff cannot claim ownership of it. Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits of its CUTSA claim for misappropriation of trade secrets.

For these reasons, the court finds that Plaintiff has satisfied the first Winter factor only on its Lanham Act claim for false designation of origin and unfair competition.

b. *Likelihood of Irreparable Harm*[11]

As with the Jackson Tire Defendants, Plaintiff contends that it suffers irreparable harm to its goodwill and reputation as a result of the Sierra Tire Defendants' false designation of origin. (Doc. No. 31-1 at 28–29.) In their opposition, the Sierra Tire Defendants argue that Plaintiff has not demonstrated a likelihood of irreparable harm for three reasons. (Doc. No. 33 at 18–21.)

First, the Sierra Tire Defendants argue that Plaintiff cannot show impending injury because it "waited nearly a year after filing suit to seek a preliminary injunction based on the same allegations raised in the original pleading" and that such "delay undermines and defeats any claim of immediate harm." (Doc. No. 33 at 19.) However, as Plaintiff notes in its reply, Plaintiff relied heavily on discovery produced in April 2026, and on Philip and Kurst's depositions, for which transcripts were made available in May 2026. (Doc. No. 35 at ¶ 3.) Thus, there is no

[11] Plaintiff relies upon the same argument relating to irreparable harm for the Sierra Tire Defendants as for the Jackson Tire Defendants. (Doc. No. 31-1 at 28–29.) Thus, for the same reasons discussed above, the court finds that Plaintiff fails to demonstrate a likelihood of irreparable harm resulting from the Sierra Tire Defendants' use of the Pine Grove Location telephone number or equipment left in the Pine Grove Location from Jackson Tire's former operations. Thus, the court will not address those harms further as to the Sierra Tire Defendants.

evidence that Plaintiff acted dilatorily in bringing the pending motion.

Second, the Sierra Tire Defendants argue that Plaintiff's alleged injuries are compensable with monetary damages. (Doc. No. 33 at 19–20.) However, as discussed above, courts regularly find that damage to a company's reputation and goodwill, such as that created by a false designation of origin claim, are difficult to quantify and therefore irreparable. Further, under a recent amendment to the Lanham Act, a "plaintiff seeking any such injunction [under the Lanham Act] shall be entitled to a rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction." 15 U.S.C. § 1116(a). Thus, Plaintiff is entitled to a presumption of irreparable harm which the Sierra Tire Defendants fail to rebut.

Third, the Sierra Tire Defendants claim that Plaintiff fails to demonstrate a causal relationship between the alleged misconduct and alleged harm, as Plaintiff merely provides a declaration from its Chief Operating Officer stating that many of the customers that previously patronized Jackson Tire are now, and will continue, patronizing Sierra Tire's Pine Grove Location. (Doc. No. 33 at 20.) However, courts regularly grant injunctive relief in claims brought under the Lanham Act precisely because the damages are difficult to quantify; Plaintiff's inability to precisely quantify the harm caused by the alleged violation cannot serve both as the basis for and against a finding of irreparable harm. Further, here too, the Sierra Tire Defendants present no evidence to rebut Plaintiff's statutory presumption of irreparable harm. Thus, the court finds that Plaintiff has demonstrated a sufficient likelihood of irreparable harm to support injunctive relief as to its Lanham Act claim.

c. *Balance of the Equities*

Plaintiff contends that the balance of the equities weighs in its favor because "[w]ithout injunctive relief, [Plaintiff] will continue to lose the goodwill, customer base, and market position it bargained for and paid millions to acquire." (Doc. No. 31-1 at 29–30.) In their opposition, the Sierra Tire Defendants argue that the balance of the equities weighs in their favor because Plaintiff seeks "to shut down a small, independently owned business indefinitely and eliminate Kurst's and his four employees' livelihoods." (Doc. No. 33 at 21.) The court agrees that an

injunction shutting down Sierra Tire would weigh the balance of the equities insurmountably in Sierra Tire's favor. However, as discussed below, the court's injunction as to Sierra Tire will prohibit them only from representing Sierra Tire as affiliated with Jackson Tire or Plaintiff. The Sierra Tire Defendants concede that they are not affiliated with Jackson Tire or Plaintiff and argue that they have made no such representation. (Doc. No. 33 at 17.) Thus, minimal harm, if any, will be caused to the Sierra Tire Defendants by the injunction. The balance of equities weighs toward granting an injunction.

d. *Public Interest*

As with the Jackson Tire injunction, the injunction against the Sierra Tire Defendants does not implicate non-parties to this action. Accordingly, this factor is neutral.

The court finds that Petitioner has raised serious questions as to the likelihood of success on the merits of its claim brought under the Lanham Act, and that the other *Winters* factors weigh in favor of injunctive relief. Thus, the court will grant in part Plaintiff's motion for a preliminary injunction against the Sierra Tire Defendants, specifically enjoining them from making representations regarding Sierra Tire's affiliation with Jackson Tire or Plaintiff.

3. <u>Bond</u>

Federal Rule of Civil Procedure 65(c) enables a district court to issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. "Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). District courts have "discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985)).

As to the Jackson Tire Defendants, Plaintiff claims that the court should require no bond because they "face no cognizable harm from being ordered to comply with the very contractual

and statutory obligations they voluntarily undertook." (Doc. No. 31-1 at 31) (citing *Bad Ass Coffee Co. of Haw.*, 636 F. Supp. 2d at 1251). The Jackson Tire Defendants argue that a bond is necessary because Plaintiff "is asking the Court to shut down Jackson Tire during the pendency of this lawsuit" and that "[s]uch extreme relief cannot be granted absent a bond." (Doc. No. 37 at 23.) The court will construe this as an objection to the closure of Sierra Tire without bond. The court, however, will not issue an injunction closing Sierra Tire. Thus, the court finds that the Jackson Tire Defendants are not entitled to bond.

The Sierra Tire Defendants contend that Plaintiff's argument does not apply to them because they, unlike the Jackson Tire Defendants, did not violate any contractual obligations that they elected to undertake. (Doc. No. 33 at 22.) The Sierra Tire Defendants further argue that, because Plaintiff is asking the court to shut down Sierra Tire during the pendency of this litigation, Plaintiff should be required to "post a substantial bond to cover the potentially enormous damages from lost business and related costs." (*Id.*) Again, the court will not order that Sierra Tire be shut down and instead will require only that the Sierra Tire Defendants not represent Sierra Tire to be affiliated with Jackson Tire or Plaintiff, which the Sierra Tire Defendants concede it is not. Thus, by the Sierra Tire Defendants' own reasoning, they will sustain no damages if it is found that the preliminary injunction against them was wrongfully entered, and no bond is necessary.

**B. Motion to Dismiss**

The Sierra Tire Defendants move to dismiss only Plaintiff's fifth cause of action for intentional interference with contractual relations pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19 at 3.) The Sierra Tire Defendants contend that because Plaintiff alleges that "Sierra Tire is *owned, managed, controlled,* and *operated* by Philip Bovero," Kurst and Sierra Tire cannot be alleged to have tortiously interfered with the APA to which Philip was a party. (*Id.* at 6) (citing Doc. No. 16 at ¶ 94.) The Sierra Tire Defendants emphasize that the California Supreme Court has held "that a party to a contract cannot be held liable in tort for conspiracy to interfere with its own contract." (*Id.* at 5) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513–14 (1994).

In its opposition, Plaintiff contends that *Applied Equipment* stands for the proposition that a party to a contract cannot be held liable under tort for breach of the contract, not that any person alleged to have an economic interest in the contract cannot be held liable under tort for inducing its breach. (Doc. No. 27 at 8–9.) Indeed, in *Applied Equipment* the court explicitly reasoned that a "party already has a legal incentive to perform—the likely prospect of liability for breach of contract" such that there is "no additional value, and significant additional uncertainty, from the imposition of tort damages on a contracting party in this instance." *Applied Equip.*, 7 Cal. 4th at 520. As Plaintiff emphasizes, by the Sierra Tire Defendants' interpretation of *Applied Equipment*, a "party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability." (Doc. No. 27 at 9) (quoting *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014). In numerous recent cases, the California Court of Appeal has limited *Applied Equipment* to specifically holding only that parties to a contract are precluded from tortious liability. *Lennar Mare Island, LLC v. Steadfast Insurance Co.*, 139 F. Supp. 3d 1141, 1163 (E.D. Cal. 2015) (collecting cases).

The court finds Plaintiff's argument availing. Plaintiff does not allege that the Sierra Tire Defendants are party to or otherwise bound by the APA; indeed, Plaintiff alleges that the Sierra Tire Defendants are *not* party to or otherwise bound by the APA. (Doc. No. 16 at ¶ 91) ("Kurst and Sierra Tire were not signatories to the APA, and they, on information and belief, had no legitimate social or economic interest in the contractual relationship between" Plaintiff and the Jackson Tire Defendants). The *Applied Equipment* holding, by its plain language, prevents a party to a contract from tort liability resulting from a mere breach of that contract. That holding cannot be extended to make the Sierra Tire Defendants—non-parties to the APA who are alleged to have conspired with a party to the APA to breach its terms—completely immune to both claims sounding in tort and in contract.

Accordingly, the court will deny the Sierra Tire Defendants' motion to dismiss the fifth cause of action for intentional interference with contractual relations.

/////

/////

## CONCLUSION

For the reasons explained above,

1. Plaintiff's motion for a preliminary injunction (Doc. No. 31) is GRANTED IN PART as follows:

   a. Defendants Jackson Tire Service and Philip Bovero shall be immediately enjoined and restrained from,[12] directly or indirectly (including through any affiliate, family member, employer, employee, agent, or contractor):

      i. Owning, operating, managing, controlling, consulting for, being employed by, or otherwise providing services to Defendant Sierra Tire at the automotive service facility located at 20084 Highway 88, Pine Grove, California 95665 (the "Pine Grove Location") or any other automobile repair or tire service business within 50 miles of automobile service facility that Plaintiff purchased located at 801 S. Highway 49, Jackson, California 95642 ("Purchased Location"), in violation of the APA;

      ii. Communicating with Kurst Bovero or any officer, employee, agent, or representative of Sierra Tire concerning the ownership, management, or operation of any automobile repair or tire service business, including (without limitation) the former operations of Jackson Tire; and

      iii. Using, disclosing, or relying on any customer lists, service records, pricing information, or other confidential or trade secret information acquired by virtue of the APA;

   b. Defendants Sierra Tire and Kurst Bovero shall be immediately enjoined and restrained from, directly or indirectly (including through any affiliate,

---

[12] The court notes that the non-compete provision of the APA applies for five years following the closing date. To the extent this preliminary injunction remains in effect beyond that period, the Jackson Tire Defendants may move to dissolve any portion of the injunction no longer applicable under that provision.

employee, agent, or contractor):

i. Advertising, endorsing, suggesting, or otherwise representing—whether expressly or implicitly—that Sierra Tire is the Successor to Jackson Tire, a continuation of Jackson Tire, or affiliated with Jackson Tire or Plaintiff; and

2. The Sierra Tire Defendants' motion to dismiss (Doc. No. 19) is DENIED.

IT IS SO ORDERED.

Dated: **August 10, 2026**

Dena Coggins
United States District Judge